UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
MARK MOORE,

                Plaintiff,

  -against-                             **COMPLAINT**

CITY OF NEW YORK, and
LEONARD CLARKE,

                                   **PLAINTIFF DEMANDS**
               Defendants.       **A TRIAL BY JURY**
------------------------------X

       Plaintiff Mark Moore, by his attorneys, Lumer & Neville, as and for his Complaint, hereby alleges as follows, upon information and belief:

## PARTIES, VENUE and JURISDICTION

1. At all times hereinafter mentioned, plaintiff Mark Moore was an adult male resident of Kings County, in the State of New York.

2. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, defendant Leonard Clarke (Tax 940013/Shield 27183), was employed by the City of New York as a member of the NYPD. Defendant Clarke is sued herein in his official and individual capacities.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,

1343 and 1367, and 42 U.S.C. § 1983.

        5.      Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

        6.      That plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

        7.      At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

        8.      That the within action has been initiated within one year and ninety days of the happening of the events of which plaintiff complains.

## RELEVANT FACTS

        9.      On October 29, 2013, at or about 5:00 p.m., plaintiff was lawfully present at or near the intersection of East 46 Street and Avenue D, in Kings County, New York.

        10.     Plaintiff had a conversation with an acquaintance at the location and they then parted company.

        11.     Plaintiff was not in possession of any legal or illegal drugs or any controlled substances.

        12.     Plaintiff did not give his acquaintance legal or illegal drugs or any

controlled substances

13. As plaintiff's acquaintance headed towards a car, which was parked on Avenue D between East 45 and 46 Streets, defendant Clarke and two other officers exited from an unmarked NYPD vehicle that had stopped near plaintiff.

14. Clarke and his fellow offices were members of and working under the supervision of the NYPD's Narcotics Bureau Brooklyn South ("NBBS").

15. Plaintiff was seized, handcuffed, and placed in the police vehicle.

16. Plaintiff's acquaintance and another person, who may have been in the vehicle towards which he was walking, were also arrested.

17. The defendants lacked probable cause to arrest plaintiff and it was unreasonable for them to believe probable cause existed.

18. Plaintiff was transported to a local area NYPD station house, where his arrest was processed.

19. Plaintiff was detained for a period of time before being transported to Kings County Central Booking, where he was held for an additional period of time and subjected to a strip search.

20. While plaintiff was imprisoned by the defendants, defendant Clarke completed arrest paperwork in which he expressly claimed that he personally observed plaintiff's acquaintance hand plaintiff money, and that he observed plaintiff hand his acquaintance a ziplock bag containing two pills.

21. These claims were materially false in all regards, as these events never

happened. Plaintiff never possessed any contraband and never gave his acquaintance any contraband.

22. Clarke forwarded these false allegations to the Kings County District Attorney ("KCDA") in order to justify the arrest and to persuade the KCDA to initiate the plaintiff's criminal prosecution.

23. Clarke knew and understood that the KCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of their claims and statements, and was assuming that all of these factual statements and claims Clarke was relaying were truthful in all material respects, and that no material or exculpatory information had been withheld.

24. As a direct result of these false allegations by Clarke, the plaintiff was criminally charged by the KCDA under docket 2013KN083964 with three counts of criminal possession or sale of a controlled substance, including two felony counts.

25. The case was never presented to a grand jury and plaintiff was not indicted.

26. Plaintiff was required to return to Court on multiple occasions.

27. On April 1, 2014, plaintiff agreed to accept an Adjudication in Contemplation of Dismissal.

28. At no time prior to or during the encounter did probable cause to arrest the plaintiff exist, nor was it reasonable for the defendants to believe that there was probable cause to arrest plaintiff.

29. At no time did either of the officers present with Clarke take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by Clarke, including the arrest of plaintiff without probable cause or the subsequent malicious prosecution and fabrication of evidence.

30. The defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

31. Clarke's actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

32. More precisely, under this policy or plan, officers within the Narcotics Division generally, and NBBS in particular, would knowingly make arrests of individuals regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing the individual(s) being arrested in actual or constructive possession of the narcotics in question.

33. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

34. In addition, members of the Narcotics Division are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Division routinely make arrests and engage in other police activity without sufficient legal

cause in order to raise their levels of "activity" and improve the perception of their job performance.

35. The NYPD generally, and NBBS in particular, tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, members of the Narcotics Division are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

36. That at all times relevant herein, Clarke and his fellow officers were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

37. Plaintiff repeats the allegations contained in paragraphs "1" through "36" above as though stated fully herein.

38. Defendant Clarke willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

39. Defendant Clarke willfully and intentionally fabricated evidence and denied plaintiff a fair trial by falsely claiming that he observed plaintiff engage in a hand to hand sale of a controlled substance (or any other contraband), and then forwarding these

materially false factual claims to the KCDA in order to justify his arrest of plaintiff, and to bring about and cause the deprivation of plaintiff's liberty and his criminal prosecution by the KCDA.

40. Defendant Clarke caused plaintiff to be subjected to a malicious prosecution by causing the commencement of his prosecution through the submission of false and fabricated evidence to the KCDA.

41. By so doing, defendant Clarke subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, malicious prosecution, and the deprivation of his right to a fair trial through the use of fabricated evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

42. By reason thereof, defendant Clarke has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

43. Plaintiff repeats the allegations contained in paragraphs "1" through "43" above as though stated fully herein.

44. Defendant Clarke's actions in this matter were carried out in accordance with heretofore described existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard

to probable cause.

45. More precisely, under this policy or plan, officers within the NBBS, including defendant Clarke and his colleagues, would, when making an arrest, routinely arrest all persons found in or around the premises where an arrest occurred, or in proximity to the person being arrested, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view, in the possession of each of the persons arrested, or otherwise falsely claim the existence of facts to justify the arrest.

46. The purpose of this policy or plan was to generate large numbers of arrests to help these officers, and by extension, the NYPD, create a false impression of positive activity by their officers.

47. In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

48. The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiff's arrest, despite the municipal defendant's knowledge that the KCDA (and other prosecutors' offices) were not charging the individuals arrested, or otherwise not actively pursuing their prosecutions, or that there was insufficient evidence to justify the arrests and illegal searches, or that the arresting officers were seeking to bolster the arrests with false allegations, and that the KCDA often had found insufficient cause to justify

the imposition of charges or continued prosecution if charges were filed.

49. Rather than take steps to abolish this plainly unconstitutional and unlawful police, the municipal defendant continued to tacitly endorse this policy of deliberate misconduct, even after it was publicly acknowledged during court proceedings..

50. In October 2011, following a bench trial in New York State Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

51. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

52. That at all times relevant herein, the defendants were acting within the

9

scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

53. Defendant City of New York created, approved or condoned the practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests without probable cause in order to create false or misleading arrest numbers.

54. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

### THIRD CAUSE OF ACTION

55. Plaintiff repeats the allegations contained in paragraphs "1" through "54" above as though stated fully herein.

56. Plaintiff was subjected to false imprisonment, malicious prosecution, and the denial of a fair trial by the defendants.

57. At no time did defendants have any legal basis for arresting or imprisoning plaintiff, or commencing criminal process against them, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable or otherwise appropriate.

58. Defendant Clarke is therefore liable under state law to plaintiff for false imprisonment, malicious prosecution, and denial of a fair trial.

59. The City of New York is liable to plaintiff for these violations of state

law by defendant Clarke.

60. By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

]


]


]



(Remainder of page intentionally left blank)


]


]


]

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i.    on causes of action one through three, actual damages against each of the defendants, and punitive damages against defendant Clarke, in an amount to be determined at trial;

    ii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iii.    such other relief as the Court deems just and proper.

Dated:  New York, New York
         July 18, 2014

                        LUMER & NEVILLE
                        Attorneys for Plaintiff
                        225 Broadway, Suite 2700
                        New York, New York 10007
                        (212) 566-5060

By: _____
      Michael B. Lumer (ML-1947)